## JACKSON v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. October 30, 1917.)

### No. 2289.

CARRIERS ☞286(4)—INJURIES TO PASSENGERS—ENTRANCE TO AND EXIT FROM STATION.

A railroad company, which maintained a ferry house, the entrance to which was through several broad arches abutting the street, with no pathway or flagging leading to any particular entrance, was not liable for an injury to a prospective passenger, caused by a defect in the paving of the street 10 or 12 feet distant from its property line, as it was under no obligation to repair the street, and had no right to do so.

In Error to the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

Action by Fannie M. Jackson against the Pennsylvania Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

H. C. Gilson, of Jersey City, N. J., for plaintiff in error.

Vredenburgh, Wall & Carey and John A. Hartpence, all of Jersey City, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. This action was brought by Fannie M. Jackson against the Pennsylvania Railroad Company in a state court, and thereafter removed to the court below on the ground of diversity of citizenship. On trial in that court, a judgment of nonsuit was entered in favor of the defendant; whereupon the plaintiff sued out this writ of error.

The proofs in the cause tended to show that the railroad operated, as part of its railroad system, a ferry from the foot of Cortlandt street, New York, to Jersey City. The approach to such ferry was across West street, which was paved with Belgian block, and the entrance to the ferry house was through several broad arches abutting the street. As the plaintiff approached one of these openings and was still on the West street pavement, and while still 10 or 12 feet distant from the railroad's property line, she stumbled over some Belgian blocks which protruded above the general level of the pavement, fell, and was injured. These blocks had so protruded for several weeks. The action was to recover for such injuries, and the negligence charged therein was that the railroad, "with full knowledge and notice thereof, negligently permitted the said path or roadway to be and remain in a dangerous condition, and negligently suffered the same to be without proper repair."

It will thus be seen that the question here involved is, not the railroad's duty to provide a safe egress for a departing passenger or a safe ingress on its own property for an incoming one, but whether the railroad was liable to an arriving passenger for an injury happening on an abutting public street, caused by the alleged unsafe condition of

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

such street. It will also be noted that the railroad provided several other entrances to the ferry from the street, any one of which could have been used; that there was no pathway or flagging on West street leading to any particular entrance; and that the place where the plaintiff stumbled was a course she was not constrained to take. It will also be noted that the alleged negligence of the railroad was not in allowing the entrance opposite these protruding Belgian blocks to remain in use, nor in failing to give warning of the protruding blocks, but was solely, as we have quoted, for permitting the roadway to be out of repair.

Under the circumstances, we fail to see how the faulty condition of the street can be charged to the railroad. It was neither under obligation to repair it, nor, indeed, had it a right to do so. To have done so would have been a wrong on its part. If it was bound to repair the highway 10 feet back, why was it not bound to repair 100 feet further back? The incoming passenger had to pass over the whole width of the street to reach the ferry, and the same principle and reason that would constrain the railroad to compel repairs of a defective place 10 feet out on the street would extend that duty to the whole area of the street. Moreover, to hold the railroad in effect responsible for the condition of the abutting street is to breed confusion and invite carelessness. On the other hand, if the railroad is held rigidly to its duty in regard to territory it controls, and the city likewise to its duty in the territory it controls, the public will be better protected than where we have divided, dual duty. In the present case it would seem the plaintiff could have sued the city for its alleged neglect, and to subject the railroad to an alternative and original liability for such alleged negligence is to encourage carelessness on the part of the municipality.

We have examined the many cases cited, and, while stray phrases may here and there be found countenancing such an extension of responsibility on the part of the carrier as is here suggested, we have found none which either in facts or principles would warrant our holding the plaintiff entitled to recover. And it may be said that through all the cases bearing on this general subject it will be found the decisive factor is whether the defective locus in quo was on the carrier's property, was in its possession, or was under its control.

Restricting our decision to the facts and pleadings here involved, it is clear that no ground was shown to hold the railroad guilty of the negligence charged. The judgment below is therefore affirmed.